1
Stephen R. Holden, Bar No. 166094
HOLDEN LAW GROUP

2
1234 High Street
Auburn, CA  95603

3
Email:      steve@holdenlawgroup.com
Telephone:      530.888.0901

4
Facsimile:      530.888.0902

5
Attorneys for Defendant University of the Pacific

6

7

8
IN THE UNITED STATES DISTRICT COURT

9
FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
JOANNE WARWICK,

11
                    Plaintiff,

12
        v.

13
UNIVERSITY OF THE PACIFIC, *et al.*,

14

15
                    Defendants.

Case No.

**CV 08        3904**

**DEFENDANT UNIVERSITY OF THE PACIFIC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO F.R.C.P. § 12(b)(6)**

16

17
        COMES NOW Defendant University of the Pacific ("UOP"), pursuant to Rule 12(b)(6) of the

18
Federal Rules of Civil Procedure, and moves for dismissal of Plaintiff's Second Amended Verified

19
Complaint.  In support of its motion, UOP states as follows:

20
                                    **INTRODUCTION**

21
        This case arises out of an action filed by Plaintiff, Joanne Warwick ("Plaintiff"), against a

22
private entity, UOP; a state agency, California Department of Corrections and Rehabilitation

23
("CDCR"); and two individual CDCR employees, Patricia Miller and David Romero.  Plaintiff's

24
allegations arise from her termination as a panel attorney from the California Parole Advocacy Program

25
("CalPAP").  The CalPAP program is operated by UOP through a contract awarded to it by the State

26
of California to provide counsel to parolees facing parole revocation.

27
///

28
///

## PROCEDURAL BACKGROUND

On September 7, 2006, an action was commenced in the Superior Court of the State of California in and for the City and County of San Francisco, entitled JOANNE WARWICK v. CALIFORNIA PAROLE ADVOCACY PROGRAM, et al., as Case Number CGC-06-455973.  In her initial verified complaint, Plaintiff alleged twelve causes of action:  (1) wrongful termination in violation of public policy; (2) breach of contract; (3) slander; (4) libel; (5) intentional interference with prospective economic advantage; (6) intentional interference with contractual relations; (7) violation of due process – Cal. Const. Art. I., Section 15; (8) intentional infliction of emotional distress; (9) negligence; (10) negligent infliction of emotional distress; (11) violation of California Whistleblower Protection Act; and, (12) declaratory relief.  To the best of UOP's knowledge, the original complaint was not served on any of the defendants.  The defendant named were California Parole Advocacy Program, California Board of Parole Hearings and California Department of Corrections and Rehabilitation, and individual UOP and CDCR employees Marvin Speed, Mary Swanson, Andrew Walker, Rick Heyer, Paul Lacy, Ted Rich, J.D. Stokes, Jill Brown, Claudia Belshaw, Pat Cassady, Rick Winistorfer, Patricia Miller, Robert Ambroselli, Sue E. Facciola, Gary C. Swarthout, David Romero and Mike Miller.

On September 22, 2006, Plaintiff filed in the above-mentioned action Plaintiff's Amended Verified Complaint for Damages, Declaratory Judgment and Permanent Injunctive Relief.  Plaintiff added a thirteenth cause of action, but the addition was only duplicative of her original fifth cause of action for intentional interference with prospective economic advantage.  The amended complaint added an additional defendant, namely, Institute for Administration of McGeorge School of Law.

On July 2, 2008, Plaintiff filed an amendment to her Amended Verified Complaint to substitute UOP in as Doe 1.  Plaintiff's properly served the Amended Verified Complaint on UOP on July 2, 2008.  The parties subsequently stipulated to allow Plaintiff to amend her complaint and stipulated that UOP was not required to answer the first amended complaint.  Plaintiff's Second Amended Verified Complaint was filed in the Superior Court in and for the City and County of San Francisco on July 18, 2008.

The Second Amended Verified Complaint alleges ten causes of action: (1) violation of 42 U.S.C. § 1983 – Free Speech, Retaliation & Due Process; (2) wrongful termination in violation of

1  public policy; (3) negligent supervision; (4) intentional infliction of emotional distress; (5) violation of

2  California Labor Code §1102.5 and California Government Code section 8547, *et al.*; (6) breach of

3  contract; (7) intentional interference with prospective economic advantage; (8) intentional interference

4  with contractual relations; (9) negligence; (10) declaratory relief; and, an unnumbered paragraph

5  requesting punitive damages.

6      Based upon the newly alleged violation of 42 U.S.C. section 1983, UOP filed for removal of

7  Plaintiff's action from the Superior Court to this Honorable Court.

8                                                **ARGUMENT**

9      Plaintiff did not plead causes of action (7), (8) or the punitive damages allegations against UOP

10  and on that basis UOP will not address the defects of those causes of action.  UOP challenges

11  Plaintiff's Second Amended Verified Complaint (hereinafter referred to as the "Complaint") as follows:

12  **A.    Standard for Reviewing FRCivP., Rule 12(b)(6) Motion**

13      On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v.*

14  *Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).  The court is bound to give the plaintiff

15  the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the

16  complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL CIO v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83

17  S.Ct. 1461, 10 L.Ed.2d 678 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that

18  fact is a reasonable inference from facts properly alleged.  *See id.; see also Wheeldin v. Wheeler,* 373 U.S. 647,

19  648, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

20      In general, the complaint is construed favorably to the pleader.  *See Scheuer v. Rhodes,* 416 U.S.

21  232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).  So construed, the court may not dismiss the complaint

22  for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

23  support of the claim which would entitle him or her to relief.  *See Hishon v. King & Spalding,* 467 U.S. 69,

24  73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2

25  L.Ed.2d 80 (1957)).  In spite of the deference the court is bound to pay to the plaintiff's allegations,

26  however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she]

27  has not alleged, or that the defendants have violated the laws in ways that have not been alleged."

28  *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103

1    S.Ct. 897, 74 L.Ed.2d 723 (1983); *Scott v. Solano County Health and Social Services Dept.*, 459 F.Supp.2d 959,

2    963-964 (E.D.Cal., 2006).

3    **B.    Plaintiff's First Claim for Relief – Violation of 42 U.S.C. § 1983, Free Speech, Retaliation**
        **& Due Process – Is Time Barred.**
4
            Plaintiff alleges that she was removed from the UOP/CalPAP panel of attorneys on May 31,
5
     2005.  Her first attempt of alleging a violation of a federal statute in general, and as it pertains to free
6
     speech or retaliation issues in particular, was in the Second Amended Verified Complaint, which was
7
     filed on July 18, 2008 – more than two years after any alleged violation of 42 U.S.C. § 1983.
8
            Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of
9
     limitations for personal injury actions.  *See Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d
10
     254 (1985).  In California, personal injury actions that accrue on or after January 1, 2003, are governed
11
     by a two-year statute of limitations.   *Berg v. California Horse Racing Bd.*, 419 F.Supp.2d 1219,
12
     1225 (E.D.Cal., 2006); California Code of Civil Procedure § 335.1.[1]  "Although state law determines the
13
     length of the limitations period, federal law determines when a civil rights claim accrues." *Morales v. City*
14
     *of Los Angeles,* 214 F.3d 1151, 1153-1154 (9th Cir.2000).  Under federal law, "a claim accrues when the
15
     plaintiff knows or has reason to know of the injury which is the basis of the action." *Tworivers v. Lewis,*
16
     174 F.3d 987, 992 (9th Cir.1999).
17
            Because Plaintiff alleges that the fruition of her claims culminated when she was removed from
18
     the panel on May 31, 2005, the court reasonably can conclude that Plaintiff's action accrued at the latest
19
     on that date.  Since Plaintiff did not allege her claims under 42 U.S.C. § 1983 until the filing of the
20
     Second Amended Complaint on July 18, 2008, her First Claim for Relief is time barred.

21   **C.    Plaintiff's Second Claim for Relief – Wrongful Termination in Violation of Public Policy**
        **– Fails to Allege Facts Sufficient to Sustain Her Claim for Relief.**
22
            To prevail on a claim of wrongful termination in violation of public policy, a plaintiff must
23
     establish (a) an employer-employee relationship; (b) a sufficient violation of public policy; (c) the
24
     termination was the legal cause of the employee's damage; and, (d) the nature and extent of the
25
     employee's damages.  *Holmes v. General Dynamics Corp.*, 17 Cal.App.4th 1418, 1426, 22 Cal.Rptr.2d 172
26

27   _____
     [1] It is noted that the longer statute of limitations of four years proscribed by 28 U.S.C. § 1658 is not
28   applicable to Plaintiff's Section 1983 claims, because Section 1658 permits application to statutes
     enacted prospectively of its enactment.  Section 1983 was enacted well prior to the enactment of § 1658.

1   (1993). For a policy to be sufficient to support a tortuous employment termination claim, it must

2   satisfy all of the following requirements: (a) it must be delineated in a statutory or constitutional

3   provision, administrative regulation, or mandatory ethical rule; (b) it must inure to the benefit of the

4   public rather than merely serving the interests of the individual; (c) it must be fundamental and

5   substantial; it must be well established at the time of the termination; and there must be a nexus

6   between the public policy violation and the adverse action taken against the employee. *Stevenson v.*

7   *Superior Court*, 16 Cal.4th 880, 894, 66 Cal.Rptr.2d 888, 894 (1997); *Moorpark v. Superior Court*, 18 Cal.4th

8   1143, 1159, 77 Cal.Rptr.2d 445 (1998).

9       The court in *Green v. Ralee Engineering Co.*, 19 Cal.4th 66, 89-90, 78 Cal.Rptr.2d 16, 31, 960 P.2d

10  1046, 1061-1061 (1998), stated:

11              We emphasize that not all administrative regulations can support
                such claims, but only those that implicate substantial public policies.
12              As *Foley* demonstrated, it is insufficient for employees to allege that
                they were discharged for refusing to violate a statute or follow a
13              statutory duty; they must also allege that the statute in question was
                designed to protect the public or advance some substantial public
14              policy goal. (*Foley, supra,* 47 Cal.3d at p. 670, 254 Cal.Rptr. 211, 765
                P.2d 373.)[2] Employees must do the same when alleging a discharge
15              for refusing to follow administrative regulations that implement an
                important statutory objective. In the case of both statutes and
16              regulations based on statutes, courts must distinguish between those
                that promote a "clearly mandated public policy" and those that do
17              not. (See *Foley, supra,* 47 Cal.3d at p. 670, fn. 11, 254 Cal.Rptr. 211,
                765 P.2d 373.) Contrary to the dissents, we are confident courts will
18              continue to be able to make that distinction.

19  *Id.* at 89-90. Plaintiff alleges her termination was in violation of her constitutional rights to engage in

20  free speech and in violation of California's public policy against punishing public servants for reporting

21  violations of state and federal law. Complaint, p. 11, ¶ 32. Plaintiff also alleges her termination was in

22  violation of California public policy as expressed in the U.S. Constitution's first amendment right to free

23  speech, and California's public policy against punishing employees for reporting violations of law

24  including California Code of Civil Procedure, section 284, California Labor Code sections 1102.5 and

25  1105, Government Code sections 8547, *et seq.* and California Code of Regulations. Complaint, p. 11, ¶

26  33.

27       First, Plaintiff fails to allege any facts that she is a public servant entitling her to the protection

28  _____
    [2]  *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 765 P.2d 373, 254 Cal.Rptr. 211 (1983)

of public policy as cited in ¶ 2 of the Complaint. Rather, Plaintiff alleges that she is the employee of UOP, a private university. Complaint, p. 5, ¶ 14. California Government Code section 8547, *et seq.* specifically applies to government employees. An "employee" under Section 8547 is defined under Cal. Government Code section 8547.2 as "any individual appointed by the Governor or employed or holding office in a state agency". Plaintiff is not a government employee and has not alleged as such. Therefore, any claims Plaintiff has made under Cal. Government Code, section 8547, must be dismissed.

Additionally, Plaintiff cites to Title 15 of the California Code of Regulations. Title 15 applies to Crime Prevention and Corrections and sets forth, in part, general institution regulations, including security and visitation, at adult correctional facilities. The government, not UOP, is required to comply with the rules and regulations set forth in Title 15. Consequently, Plaintiff cannot use Title 15 as the basis for her allegations that UOP wrongfully discharged her in violation of public policy. Additionally, Plaintiff fails to allege that any violation of Title 15 affected the public rather than her own personal interests.

Second, while UOP disputes that Plaintiff was its employee; that fact must be taken as true for purposes of this motion. Plaintiff has failed to allege that violation of the statutes cited was sufficient to support a claim of wrongful termination. In other words, Plaintiff has not alleged that the statutes inure to the benefit of the public rather than her individual interests or that the policies are fundamental and substantial and were established at the time of her termination. Plaintiff's failure to allege such facts are detrimental to her claim for relief under a theory of wrongful termination in violation of public policy.

**D.     Plaintiff's Third Claim for Relief – Negligent Supervision – Fails to State a Claim Against UOP for which Relief Can be Granted.**

The elements of a cause of action for negligence are (1) the existence of a legal duty to use due care; (2) a breach of that duty; and (3) the breach as a proximate cause of the plaintiff's injury. *Wattenbarger v. Cincinnati Reds,* 28 Cal.App.4th 746, 751, 33 Cal.Rptr.2d 732 (1994). "As a practical matter, these elements are interrelated, as the question whether an act or omission will be considered a breach of duty or a proximate cause of injury necessarily depends upon the scope of the duty imposed.... [Citations.]" *(Ibid.)*

1    An employer's duty, as defined by California authority and the Restatement, is breached only

2    when the employer knows, or should know, facts which would warn a reasonable person that the

3    employee presents an undue risk of harm to third persons in light of the particular work to be

4    performed. *Federico v. Superior Court (Jerry G.)*, 59 Cal.App.4th 1207, 1214, 69 Cal.Rptr.2d 370 (1997).

5    Here, Plaintiff's allegations under the specific claim for relief are unclear. However, Plaintiff

6    alleges that UOP caused Warwick's parole attorney clearance to be withheld and Paul Lacy, a UOP

7    employee, subsequently caused suspension/revocation of Plaintiff's gate clearance and that Paul Lacy

8    ratified and or conspired with CDCR employee Patricia Miller to terminate Plaintiff from CalPAP.

9    Complaint, p. 8, ¶ 17.

10    In her Third Claim for Relief, Plaintiff alleges that UOP had the power, ability, authority, and

11    duty to stop engaging in the described conduct and to intervene to prevent or prohibit the same.

12    However, Plaintiff fails to allege under what basis UOP owed her a duty. To the extent she is alleging

13    UOP owed her a duty to supervise CDCR and its employees, Plaintiff simply cannot maintain such a

14    claim. UOP as a private entity has no authority to supervise a government entity or its employees and

15    she fails to allege any authority to the contrary.

16    Further, Plaintiff fails to allege that UOP knew or should have known that Paul Lacy was acting

17    in violation of her rights. To the extent she is alleging UOP had a duty to supervise its own employees

18    to prevent harm to Plaintiff, Plaintiff fails to allege that UOP knew or should have known that one or

19    more of its employees were acting in such a manner as to cause harm to Plaintiff.

20    **E.    Plaintiff's Fourth Claim for Relief – Intentional Infliction of Emotional Distress – Is Preempted by the Exclusivity Provisions of the California Workers' Compensation Act.**

21

22    Plaintiff alleges that she "began working with UOP/CalPAP as a CalPAP attorney" and that

23    UOP/CalPAP "exercised considerable control and supervision over the details of plaintiff's work with

24    CalPAP sufficient to constitute an employer-employee relationship …". Complaint, p. 5, ¶ 14. Plaintiff

25    alleges no other relationship with UOP. Plaintiff alleges that she "has suffered and will continue to

26    suffer physical injuries, including but not limited to, sleep difficulties. She has also sustained prolonged

27    pain and suffering, anxiety, embarrassment, humiliation, loss of self-esteem, depression, and extreme

28    and severe mental anguish and emotional distress …". Complaint, p. 14, ¶ 44. Because Plaintiff alleges

1  an employer-employee relationship, and no other, her alleged mental and physical injuries, if any, are

2  barred by the exclusivity provisions of the California Workers' Compensation Act. Cal. Labor Code

3  sections 3201, *et seq.*, *Shomaker v. Myers*, 52 Cal.3d 1, 276 Cal.Rptr. 303, 801 P.2d 1054.  *Livitsanos v.*

4  *Superior Court*, 2 Cal.4th 744, 752, 828 P.2d 1195, 1200, 7 Cal.Rptr.2d 808, 813 (1992).

5  **F.    That Portion of Plaintiff's Fifth Claim for Relief Alleging a Violation of Government Code Sections 8547, et seq. Fails As a Matter of Law.**

6  California Government Code Section 8547.1 provides that state employees should be free to

7  report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of

8  retribution. Government Code Section 8547.2 defines "employee" as "any individual appointed by the

9  Governor or employed or holding office any a state agency".

10  Plaintiff fails to allege that she is an employee as that term is defined in Government Code

11  Section 8547.2. To the contrary, she alleges that she was an employee of UOP during the times

12  relevant to this action. Thus, Plaintiff cannot maintain an action against UOP for a violation of the

13  California Whistleblower Protection Act.

14  **G.    Plaintiff's Sixth Cause of Action – Breach of Contract – Fails to Allege Facts that Plaintiff Was Performing Her Duties Under the Contract.**

15

16  To establish liability for breach of contract, a plaintiff must establish the existence of a contract,

17  plaintiff's performance, defendant's breach, and damages. *Canova v. Trustees of Imperial Irr. Dist. Employee*

18  *Pension Plan*, 150 Cal.App.4th 1487, 1494, 59 Cal.Rptr.3d 587, 592-593 (2007) *citing Careau & Co. v.*

19  *Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1388, 272 Cal.Rptr. 387 (1990). Plaintiff alleges

20  that she worked for UOP/CalPAP pursuant to the terms of a written contract whereby she agreed to

21  provide legal representation for parolees facing parole-revocation proceedings in consideration of

22  money. Complaint, p. 15, ¶ 50. Plaintiff alleges that UOP/CalPAP breached its contractual duties by

23  cutting Plaintiff's caseload and by conspiring/ratifying the acts of Defendants Miller and Romero to

24  have Plaintiff's gate clearance suspended/revoked in order to terminate her under the terms of the

25  contract. Complaint, p. 15, ¶ 52. Plaintiff fails, however, to allege that she was performing her duties

26  under the contract at the time of UOP's alleged breach, an essential element to pleading a cause of

27  action for breach of contract. Consequently, Plaintiff's Sixth Cause of Action should be dismissed.

28  ///

**H.    Plaintiff's Ninth Claim for Relief – Negligence – Is Not Independent of Her Breach of Contract Claim.**

Plaintiff alleges that UOP owed her a duty under Cal. Code of Regulations, Title 15, sections 3285, 3172.1, et seq., 3176, *et seq.*, the *Valdivia* Injunction and under the employment contract.  As argued in Sections C and F, above, UOP cannot owe a duty to Plaintiff under Title 15 of the California Code of Regulations and Plaintiff fails to allege facts to support a claim that UOP owed Plaintiff a duty under the *Valdivia* Injunction – a Stipulated Order for Injunctive Relief imposed certain duties upon the Defendants in *Valdivia v. Schwarzenegger, et al.*, Civil Case No. S-94-0671 LKK/GGH, California District Court for the Eastern District of California.  A true and accurate copy of the *Valdivia* Injunction is attached hereto as **Exhibit 1** for the Court's convenience.  UOP is not a Defendant in that action and Plaintiff has not alleged that she is a person to whom a duty is owed under the provisions of the *Valdivia* Injunction.

Further, any duties owed to Plaintiff under the employment contract and breaches thereof can only be remedied through a breach of contract claim.  Where the sole basis of potential liability is a breach of a contractual duty, the liability can not be transformed into a negligence cause of action by an allegation the defendant performed the duty negligently.  *See Wilmington Liquid Bulk Terminals, Inc. v. Somerset Marine Inc*, 53 Cal.App.4th 186, 194, 61 Cal.Rptr.2d 727 (1993) [distinguishing *Aim Insurance Co. v. Culcasi*, 229 Cal.App.3d 209, 215-2162 280 Cal.Rptr.766 (1991), where the duty that was negligently breached was not a contractual duty], disapproved on other grounds in *Vandenberg v. Superior Court*, 21 Cal.4th 815, 841, fn. 13, 88 Cal.Rptr.2d 366, 982 P.2d 229 (1999).

Based on the above, Plaintiff's Ninth Claim for Relief must be granted as a matter of law.

**I.    Plaintiff's Tenth Claim for Relief  - Declaratory Relief – Should be Dismissed Because Plaintiff's Claims Are Action Upon Past Alleged Wrongs.**

California Code of Civil Procedure section 1060 provides: "Any person interested under a . . . contract . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action in the superior court . . . for a declaration of his rights and duties in the premises, including a determination of any question of construction . . . arising under such . . . contract. He may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed

1    at the time. . . .” The broad scope of Code of Civil Procedure section 1060 is limited by section 1061

2    which states: “The court may refuse to exercise the power granted . . . in any case where its declaration

3    or determination is not necessary or proper at the time under all the circumstances.”

4    *Warren v. Kaiser Foundation Health Plan, Inc.*, 47 Cal.App.3d 678, 683, 121 Cal.Rptr. 19, 21-22 (1975).

5            In *Travers v. Louden*, 254 Cal.App.2d 926, 62 Cal.Rptr. 654 (1967), the court stated,

6                    In our research of the subject we have found no authority for the
                     proposition that declaratory relief is proper procedure when the
7                    rights of the complaining party have crystallized into a cause of
                     action for past wrongs, all relationship between the parties has ceased
8                    to exist and there is no conduct of the parties subject to regulation by
                     the court. Rarely has the declaratory procedure been resorted to in
9                    such a situation and never, we believe, with success.”

10   *Id.* at 929. The court continued,

11                   When, as here, the cause of action has already accrued and the only
                     question for determination is the ultimate liability of one party on
12                   account of consequential relief to which another is shown to be
                     entitled, it has been held that the nature of the action is not a cause
13                   for declaratory relief, but is defined by the subject-matter of the
                     accrued cause of action.”
14

15   *Id.* at 930. Plaintiff was removed from the list of UOP/CalPAP panel attorneys on May 31, 2005 and

16   the rights of the complaining party have crystallized into a cause of action for past wrongs, all

17   relationship between UOP and Plaintiff having ceased to exist and there is no conduct of the parties

18   subject to regulation by this court.

19           Further and to the extent Plaintiff is alleging declaratory relief to ensure UOP’s compliance with

20   the *Valdivia* Injunction, Plaintiff has no standing to do so – she is not a person the Injunction is

21   intended to protect.

22           To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an “injury

23   in fact” that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

24   hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely,

25   as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v.*

26   *Defenders of Wildlife,* 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Additionally, the

27   court in El Muhammad v. Schwarzenegger, 2006 WL 1883347, 1 (N.D.Cal.) (N.D.Cal.,2006) (citing

28   *Gillespie v. Crawford,* 858 F.2d 1101, 1103 (5th Cir.1988) (en banc)) stated, “ [t]o the extent plaintiff claims

1  that the *Valdivia* injunction has been violated, he must apply for relief in that case.  As a California

2  parolee, plaintiff apparently is a class member in the *Valdivia* class action and therefore should seek relief

3  by 'urging further actions through the class representative and attorney, including contempt proceedings,

4  or by intervention in the class action.'"

5      Plaintiff is not a parolee entitled to relief under the *Valdivia* Injunction and has not alleged and

6  cannot show that she has suffered an "injury in fact" as a result of any alleged violation thereof.

7  Consequently, the Court should dismiss Plaintiff's request for declaratory relief with prejudice.

8      WHEREFORE, based upon the foregoing arguments, Defendant UOP respectfully requests

9  that Plaintiff's Second Amended Complaint be dismissed with prejudice and that it be awarded fees

10  and costs herein and for such other relief as the court deems just and proper.

11                          Respectfully Submitted,

12  Dated:  August 15, 2008            HOLDEN LAW GROUP

13

14                          By: _____

15                              Stephen R. Holden
                                Attorneys for Defendant University of the Pacific

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED

MAR - 9 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

1  BINGHAM McCUTCHEN
   KAREN KENNARD  – 141925
2  KRISTEN A. PALUMBO - 215857
   Three Embarcadero Center
3  San Francisco, California 94111-4067
   Telephone:  (415) 393-2000
4
5  PRISON LAW OFFICE
   DONALD SPECTER – 83925
   General Delivery
6  San Quentin, California 94964
   Telephone:  (415) 457-9144
7
8
9  STEPHEN J. PERRELLO, JR. – 56288
   P.O. Box 880738
   San Diego, California 92618
10 Telephone: (858) 277-5900
11
12 Attorneys for Plaintiffs
13
14
15
16

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
MARI L. WILLITS – 209612
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone (415) 433-6830

ALEX LANDON – 50957
2442 Fourth Avenue
San Diego, California 92101
Telephone: (619) 232-6022

LODGED

NOV 1 8 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
        DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

17 JERRY VALDIVIA, et al.,

18        Plaintiffs,

19 v.

20

21 ARNOLD SCHWARZENEGGER, et al.,

22        Defendants.

23

24

No. Civ. S-94-0671 LKK/GGH

**STIPULATED ORDER FOR
PERMANENT INJUNCTIVE RELIEF**

25
26
27
28

1034

EXHIBIT 1

## I.    INTRODUCTION

1.    This action was filed on May 2, 1994.  Plaintiffs, on behalf of themselves and the class they represent, challenged the constitutionality of parole revocation procedures conducted by the California Board of Prison Terms ("BPT") and the California Department of Corrections ("CDC").

2.    The Court certified this case as a class action by order dated December 1, 1994.  The Plaintiff class consists of the following persons:  (1) California parolees who are at large; (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of their state parole; and (3) California parolees who are in custody, having been found in violation of parole and sentenced to prison custody.

3.    The Defendants are state officials responsible for the policies and procedures by which California conducts parole revocation proceedings.

4.    On June 13, 2002, this Court granted partial summary judgment in favor of Plaintiffs, holding that California's unitary parole revocation system violates the due process rights of the Plaintiff class under Morrissey v. Brewer, 408 U.S. 481 (1972), Gagnon v. Scarpelli, 411 U.S. 778 (1973), and related authority.  The Court held that California's parole revocation system violated the due process clause of the Fourteenth Amendment by "allowing a delay of up to forty-five days or more before providing the parolee an opportunity to be heard regarding the reliability of the probable cause determination."  Valdivia v. Davis, 206 F. Supp. 2d 1068, 1078 (E.D. Cal. 2002).

5.    The parties stipulate that this is not a "civil case with respect to prison conditions," as those terms are defined and applied in the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and that therefore this Order is not governed by the PLRA.

6.    The parties hereby stipulate that the Court shall ADJUDGE, DECLARE, AND DECREE as follows:

## II.    PARTIES

7.    The Plaintiff class consists of the following persons:  (1) California parolees who are at large; (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of their state parole; and (3) California parolees who are in custody, having been found in violation of parole and sentenced to prison custody.

8.    The Defendants are state officials responsible for the policies and procedures by which California conducts parole revocation proceedings.  Defendant Arnold Schwarzenegger is Governor of the State of California and Chief Executive of the state government.  Defendant Roderick Q. Hickman is the Secretary of the California Youth and Adult Correctional Agency.  Defendant Edward S. Alameida, Jr., is Director of the California Department of Corrections.  Defendant Richard Rimmer is Deputy Director of the California Department of Corrections, Parole and Community Services Division ("P&CSD").  Defendant Carol A. Daly is a Commissioner and Chair of the Board of Prison Terms ("BPT").  Defendants Alfred R. Angele, Sharon Lawin, Booker T. Welch, Jones M. Moore, and Kenneth L. Risen are Commissioners of the BPT.  Defendant Kenneth E. Cater is Chief Deputy Commissioner of the BPT.

## III.    DEFINITIONS

9.    The following terms when used in this Order shall have the meanings specified below:

(a)  "Parolee(s)" shall mean any member of the Plaintiff class.

(b)  "Day(s)" shall mean calendar days, unless otherwise specified.

(c)  "Revocation process" or "revocation proceedings" shall mean all stages of the process by which parole may be revoked, including placement of a parole hold, notice, waivers, service of Return to Custody Assessments, and hearings.

(d)  "Return to Custody Assessments" ("RTCAs") shall mean the practice by which Defendants offer a parolee a specific disposition in return for a waiver of the

1  parolee's right to a preliminary or final revocation hearing, or both.

2     (e)  "Parole hold" shall mean any invocation by Defendants of their authority to

3  involuntarily detain a parolee for revocation proceedings under Section 3056 of the

4  California Penal Code.  This term shall not apply to the detention of a parolee who has

5  absconded from the State of California until he or she is physically returned to the State

6  of California and is in its custody.

7

8  **IV.     POLICIES, PROCEDURES, FORMS, AND PLANS**

9     10.     For all policies, procedures, forms, and plans developed under this Order,

10 the parties shall use the following process:  Defendants shall meet periodically with

11 Plaintiffs' counsel to discuss their development of policies, procedures, forms, and

12 plans.  In preparation for such meetings, Defendants will provide Plaintiffs' counsel

13 with copies of the proposed policies, procedures, forms, and plans in draft form no later

14 than 7 days before the meeting.  If the parties reach an impasse on any particular issues,

15 they may bring the disputed issues to the Court in a motion to be heard on shortened

16 time.

17    11.     Using the procedure set forth above in Paragraph 10, Defendants shall do

18 the following:

19    (a)     Defendants shall develop and implement sufficiently specific Policies and

20 Procedures that will ensure continuous compliance with all of the requirements of this

21 Order.  The Policies and Procedures will provide for implementation of the August 21,

22 2003 Remedial Plan Outline (attached hereto as Exhibit A), as well as the requirements

23 set forth below in Paragraphs 12–24.  Defendants shall submit the completed Policies

24 and Procedures to the Court no later than July 1, 2004.

25    (b)     By July 1, 2004, Defendants shall begin implementing the following steps

26 in the parole revocation process, which shall be completely implemented by January 1,

27 2005:

28        (i)  Defendants shall appoint counsel for all parolees beginning at the

RTCA stage of the revocation proceeding. Defendants shall provide an expedited probable cause hearing upon a sufficient offer of proof by appointed counsel that there is a complete defense to all parole violation charges that are the basis of the parole hold.

(ii)  No later than 48 hours after the parole hold, or no later than the next business day if the hold is placed on a weekend or holiday, the parole agent and unit supervisor will confer to determine whether probable cause exists to continue the parole hold, and will document their determination.

(iii)  If the parole hold is continued thereafter, no later than 3 business days after the placement of the hold, the parolee will be served with actual notice of the alleged parole violation, including a short factual summary of the charged conduct and written notice of the parolee's rights regarding the revocation process and timeframes.

(iv)  For all parolees who do not waive or seek a continuance of a final revocation hearing, Defendants shall provide a final revocation hearing on or before the 35th calendar day after the placement of the parole hold.

(c)    By July 1, 2004, Defendants shall serve on counsel for Plaintiffs an assessment of the availability of facilities and a plan to provide hearing space for separate probable cause hearings.

(d)    By July 1, 2005, in addition to the steps listed above, for all parolees who do not waive or seek a continuance of a probable cause hearing, Defendants shall provide a hearing to determine probable cause no later than 10 business days after the parolee has been served with notice of the charges and rights (at the 3rd business day after the placement of the hold).

(e)    Defendants shall complete implementation of the Policies and Procedures by July 1, 2005.

12.    In addition to the provisions of the August 21, 2003 Remedial Plan Outline, the Policies and Procedures shall ensure that the following requirements are met:

13.    At the time of appointment, counsel appointed to represent parolees who have difficulty in communicating or participating in revocation proceedings, shall be

1   informed of the nature of the difficulty, including but not limited to: mental illness,

2   other cognitive or communication impairments, illiteracy, limited English-language

3   proficiency, and the need for a foreign language interpreter. The appointment shall

4   allow counsel adequate time to represent the parolee properly at each stage of the

5   proceeding.

6        14.    At the time of appointment, counsel shall be provided with all non-

7   confidential reports and any other documents that the state intends to rely upon at the

8   probable cause or final revocation hearing. After appointment, if the state learns of

9   additional evidence or documents, and intends to rely on such additional evidence or

10   documents, it shall produce them to counsel as soon as practicable before the hearing.

11        15.    Defendants shall develop and implement policies and procedures for the

12   designation of information as confidential that are consistent with the requirements of

13   due process.

14        16.    Non-confidential portions of parolees' field files shall be available to

15   parolees' counsel unless good cause exists for failure to provide access to such files.

16   Field file information shall be withheld from counsel as confidential only in accordance

17   with the policies and procedures referenced in Paragraph 15.

18        17.    Defendants shall develop standards, guidelines, and training for effective

19   assistance of state appointed counsel in the parole revocation process.

20        18.    Defendants will ensure that parolees receive effective communication

21   throughout the entire revocation process.

22        19.    Defendants will ensure that all BPT and CDC forms provided to parolees

23   are reviewed for accuracy and are simplified to the extent possible through a procedure

24   similar to that used to revise forms in Armstrong v. Davis, C94-2307 CW (N.D. Cal.).

25   This process will include translation of forms to Spanish. Revised forms will be

26   submitted to Plaintiffs' counsel for review prior to finalization, dissemination, or

27   modification.

28        20.    Upon written request, parolees shall be provided access to tapes of parole

1  revocation hearings.

2      21.    Parolees' counsel shall have the ability to subpoena and present witnesses

3  and evidence to the same extent and under the same terms as the state.

4      22.    At probable cause hearings, parolees shall be allowed to present evidence

5  to defend or mitigate against the charges and proposed disposition.  Such evidence shall

6  be presented through documentary evidence or the charged parolee's testimony, either

7  or both of which may include hearsay testimony.

8      23.    Final revocation hearings shall occur within 35 calendar days of the parole

9  hold.

10     24.    The use of hearsay evidence shall be limited by the parolees' confrontation

11  rights in the manner set forth under controlling law as currently stated in United States

12  v. Comito, 177 F.3d 1166 (9th Cir. 1999).  The Policies and Procedures shall include

13  guidelines and standards derived from such law.

14

15  V.    STAFFING LEVELS

16      Defendants shall maintain sufficient staffing levels in the CDC and BPT to meet

17  all of the obligations of this Order.

18

19  VI.    MONITORING

20      25.    The parties shall cooperate so that Plaintiffs' counsel has access to the

21  information reasonably necessary to monitor Defendants' compliance with this Order

22  and the Policies and Procedures adopted in response thereto.  Such information shall

23  include but not be limited to:  access to documents, tours, observation of parole

24  revocation proceedings, observation of training sessions, interviews of staff, and

25  interviews with parolees.  Plaintiffs' counsel may notice depositions under the Federal

26  Rules of Civil Procedure either:  (1) if Plaintiffs' counsel are unable to obtain relevant

27  information through interviews and informal document requests, or (2) after notifying

28  Defendants of non-compliance with this Order under Section VII, below.  Before

noticing a deposition, Plaintiffs' counsel must consult with opposing counsel about the deposition schedule so that the convenience of counsel, witnesses, and parties may be accommodated, if possible.

26.     The parties shall meet regularly, and at least once every 90 days, to discuss implementation issues.  At least once every 90 days, Defendants shall provide Plaintiffs' counsel with a report on hold-to-hearing time in substantially the same form, and with the same content as that currently used in Defendants' weekly "RSTS" meetings.

27.     The parties shall agree on a mechanism for promptly addressing concerns raised by Plaintiffs' counsel regarding individual class members and emergencies.

## VII.  ENFORCEMENT

28.     The Court shall retain jurisdiction to enforce the terms of this Order.  The Court shall have the power to enforce the terms of this Order through specific performance and all other remedies permitted by law or equity.

29.     If Plaintiffs' counsel believe that Defendants are not complying with any of the acts required by this Order, the Remedial Plans, or Policies and Procedures produced pursuant to it, they shall notify Defendants in writing of the facts supporting their belief. Defendants shall investigate the allegations and respond in writing within 30 days.  If Plaintiffs' counsel are not satisfied with Defendants' response, the parties shall conduct negotiations to resolve the issue(s).  If the parties are unable to resolve the issue(s) satisfactorily, Plaintiffs may move the Court for any relief permitted by law or equity.

## VIII.  ATTORNEY'S FEES AND COSTS

30.     Plaintiffs are the prevailing party in this action.  Plaintiffs' counsel may move for an award of reasonable attorney's fees and costs for obtaining relief for the Plaintiff class pursuant to 42 U.S.C. § 1988 or any other applicable law.  Defendants shall pay Plaintiffs' counsel reasonable attorney's fees for work performed in connection with monitoring and enforcing this Order.  The parties reserve the right to

1    address at a future date whether 42 U.S.C. § 1997e(d) applies to an award of attorney's

2    fees in this suit.

3    IX.    **RESOLUTION OF CLAIMS**

4         31.    This stipulated order resolves all the claims in this case, except the

5    following, to the extent that they are alleged in the Fifth Amended Complaint, if at all:

6         (a)    Appeals.  Plaintiffs assert that Defendants' administrative-appeals system

7    for parole-revocation and revocation-extension decisions violates the Due Process and

8    Equal Protection Clauses of the Fourteenth Amendment.

9         (b)    Revocation-Extension Proceedings.  Plaintiffs assert that Defendants'

10   policies, procedures, and practices for extending parole revocations based on alleged

11   rules violations while in custody violate the Due Process Clause.

12        32.    The parties anticipate that these issues will be resolved informally, without

13   need for the Court's intervention.  The parties will inform the Court if this does not

14   occur.

15

16              **IT IS SO STIPULATED.**

17

18   Dated: November 12, 2003          ROSEN, BIEN & ASARO

19

20                                     By    _____

21                                     MICHAEL BIEN

22

23   Dated: November 12, 2003          PRISON LAW OFFICE

24

25

26                                     By    _____

27                                     DONALD SPECTER

28                                     Attorneys for Plaintiffs

Dated: November 17, 2003

BILL LOCKYER, Attorney General
of the State of California,
ROBERT R. ANDERSON, Chief
Assistant Attorney General,
FRANCES T. GRUNDER, Senior
Assistant Attorney General,
JONATHAN L. WOLFF,
Supervising Deputy Attorney
General

By _____
THOMAS S. PATTERSON,
Deputy Attorney General
Attorneys for Defendants

Dated: November 17, 2003

By _____
RODERICK Q. HICKMAN
Secretary, Youth and Adult
Correctional Agency

Dated: November 17, 2003

By _____
EDWARD S. ALAMEIDA, JR.
Director, California Department of
Corrections

Dated: November 17, 2003

By _____
CAROL A. DALY
Chair, California Board of Prison
Terms

## ORDER

The Court finds that this is not a "civil case with respect to prison conditions," as those terms are defined and applied in the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626. and that therefore this Order is not governed by the PLRA. Defendants, their agents, employees, and successors in office are ordered to comply with all the terms stated above.

**IT IS SO ORDERED**

Dated: ___3/8___, 2004

LAWRENCE K. KARLTON
Chief Judge, Emeritus

**BILL LOCKYER**
Attorney General



State of California
**DEPARTMENT OF JUSTICE**



455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 703-5500
Telephone: (415) 703-5727
Facsimile: (415) 703-5843
E-Mail: Thomas.Patterson@doj.ca.gov

August 20, 2003

The Honorable Lawrence K. Karlton
Chief Judge Emeritus
United States District Court, Eastern District
501 "I" Street
Sacramento, CA 95814

RECEIVED

AUG 2 2 2003

ROSEN BIEN & ASARO

RE:   Jerry Valdivia, et al. v. Gray Davis, et al.
      USDC E.D. Cal., Case No. CIV-S-94-0671 LKK GGH P

Dear Judge Karlton:

The following is Defendants' revised remedial plan in this case. This plan represents a tremendous amount of work by the Defendants and other state officials since the July 23, 2003 order, much of which has been done recently while consulting Plaintiff's counsel.

Defendants continue to work with Plaintiffs' counsel to refine the revised remedial plan in efforts to perfect a viable revocation system that affords appropriate process.

With this in mind, neither Plaintiffs nor Defendants desire the Court to rule immediately on the adequacy of the revised remedial plan. Rather, they hope to resolve the issues soon and, of course, will advise the Court of the outcome of their efforts.

Sincerely,

THOMAS S. PATTERSON
Deputy Attorney General
Attorney for Defendants

For   BILL LOCKYER
      Attorney General

DONALD SPECTER
Prison Law Office
Attorney for Plaintiffs

Exh A

# Valdivia Remedial Plan



**Violation Occurs**

**Remedial Sanctions-If Appropriate (COP/SATCU/Alternate Placement)**

**Probable Cause Determination Review/Case Conference regarding PC 3056 Hold**

Within 48 Hours of Hold Placement (If on Weekend/Hol no later than next Business day)

**Parolee Noticed of Charges (Activity Report)/ Interviewed and Provided Copies (Charges, BPT 1073, Notice of Rights)**

* PCH Time starts 1st day after Notice and runs for 10 Bus days

3 Business Days of Hold Placement

**Violation Report Submitted by Agent of Record** — *1-3 Bus Days

**Violation Report Reviewed by Unit Supervisor** — 4 Bus Days

**Rev Packet Reviewed by Parole Administrator (PAD)**

COP/ Remedial Sanction

**Decentralized Revocation Unit Revocation Packets Received - Data Entry (RSTS)** — 5-6 Bus Days

Case Resolved

**Attorneys Receive Revocation Packets and Consult with Parolee**

**RTC Assessment by DC or PAD Offers Communicated to Attorneys** — 6-8 Bus Days

**Expedited Hearing with Offer of Proof**

Accepts/ COP/CTS/ NIC/ Remedial Sanctions/ Dismiss

**Probable Cause Hearing DC or PAD/Attorney/Parolee Exculpatory/Documentary Evidence Presented** — 9-10 Bus Days

**Rejection of offer (Witness Selection/Hearing Location/ADA Review)**

Case Resolved

**Revocation Hearing**

On or Before 35 Calendar Days of Hold Placement

Revised 8/21/03 (1130 Hours)

# VALDIVIA REMEDIAL PLAN POLICY OUTLINE

## VIOLATION OCCURS

There are a myriad of circumstances under which a Parolee can violate his or her conditions of parole. There are approximately 100,000 parole violations referred to the Board of Prison Terms each calendar year.

Currently about 60% of the reported violations are the result of arrests by local law enforcement. Of that 60% arrested by local law enforcement, many are charged in the local jurisdictions for crimes against the state, while others are not charged locally but instead referred to the Board of Prison Terms for administrative disposition.

The remaining 40% are arrests that involve the Parole officer, which may also result in local charges or referral to the Board of Prison Terms for administrative disposition.

The average parole violator's term in prison is five and one half months.

Approximately 66% of the cases referred to the Board of Prison Terms are resolved prior to the revocation hearing. Last year, the Board of Prison Terms conducted approximately 37,000 revocation hearings.

## REMEDIAL SANCTIONS

As part of the overall reform of the revocation process, the Parole and Community Services Division of the Department of Corrections will begin using remedial sanctions/community based treatment placement in January of 2004.

Some of the remedial sanctions/community based treatment programs that will be used are the Substance Abuse Treatment Control Units, Electronic Monitoring, Self-Help Outpatient/aftercare programs, and alternative placement in structured and supervised environments.

These remedial sanctions are not considered violations of parole because participation in the remedial sanctions program is voluntary and participation in the remedial sanctions program will not make the parolee presumptively ineligible for discharge at 13 months.

The goal is to reduce the number of returns to prison for violations of parole by up to 10% in 2004 and by up to 30% by 2006.

**IF REMEDIAL SANCTIONS ARE DEEMED INAPPROPRIATE AND A PAROLE HOLD IS PLACED ON THE PAROLEE, A PROBABLE CAUSE DETERMINATION/REVIEW WILL TAKE PLACE WITHIN 48 HOURS OF THE HOLD AND IF THE HOLD IS PLACED ON A WEEKEND OR HOLIDAY, THE PROBABLE CAUSE REVIEW WILL BE CONDUCTED NO LATER THAN THE NEXT BUSINESS DAY FOLLOWING THE HOLD BEING PLACED.**

Although this probable cause review for parolees is not required under any of the current, relevant case law, it is being put in place in an attempt to take a second look at those individuals who have been placed into custody to determine if the "present danger to public safety" concern still exists or if remedial sanctions/community based treatment is possible at this juncture.

As an example, a parolee who was strung out on dope may have "dried out" sufficiently that he or she is no longer a danger to him or herself or the public and may be an appropriate candidate for community based treatment in a structured, supervised program.

Under such a scenario, the parolee would be released to a community based treatment program with the understanding that a specific condition of his or her release is the completion of the program and any other special conditions of parole that the Parole Agent deems appropriate.

Current regulation and case law require any special conditions of parole to have a nexus to the parolees' commitment offense or behavior.

**PAROLEE IS GIVEN ACTUAL WRITTEN NOTICE OF CHARGES WITH A SHORT FACTUAL SUMMARY OF THE BEHAVIOR; THE NOTICE OF RIGHTS REGARDING THE REVOCATION PROCESS; AND THE BPT 1073 ADA DETERMINATION IS MADE VIA A FACE TO FACE INTERVIEW WITHIN 3 BUSINESS DAYS OF THE HOLD BEING PLACED.**

If the remedial sanctions are deemed inappropriate, within three business days of the hold being placed, the parolee shall be served actual notice of the charges against him or her accompanied by a short factual summary of the behavior; he or she shall be interviewed; an a ADA determination shall be made; the BPT form 1073 shall be completed, and parolee shall be provided with a written notice of rights regarding the revocation process and time frames. (Hereinafter referred to as "notice.")

The principles of "effective communication" apply to the revocation process. ADA accommodation must be provided for all parolees when necessary. In addition, all forms shall be printed in Spanish and English and a Spanish speaking person shall be available to interpret and explain the forms to the parolee where necessary.

**THE PROBABLE CAUSE HEARING SHALL BE CONDUCTED WITHIN 10 BUSINESS DAYS FOLLOWING THE DATE OF ACTUAL SERVICE OF THE NOTICE OF CHARGES, THE ADA DETERMINATION, AND THE NOTICE OF RIGHTS.**

Within the first 3 days after the parolee has been served with notice, the violation report must be completed and submitted to the Parole Unit supervisor.

On or before the fourth business day, the Unit Supervisor must review the report and: (1) determine if there is sufficient basis for the revocation to go forward; (2) determine if the report is accurate, complete, and contains the correct Title 15 violation sections; and (3) review the report and consider whether or not remedial sanctions/community based treatment is appropriate in lieu of proceeding with referral to the Board of Prison Terms with a recommendation that the parolee be returned to prison.

On or before the 4th business day, the revocation packet is reviewed by the Parole Administrator to determine whether or not there is a sufficient basis for the case to move forward and whether or not Remedial Sanctions/Community Based Treatment is appropriate at this juncture.

On or before the 5th business day, the revocation packet is forwarded to the decentralized revocation unit where the parolee is being held.

On or before the 6th business day, the parolee (including non-Armstrong class members) shall be appointed an attorney and the attorney shall be provided with a copy of the revocation packet, which shall contain a signed copy of the notice of charges, notice of revocation of rights, and a completed BPT 1073.

Attorney shall meet with the Parolee, provide the parolee with a copy of the revocation packet, and shall communicate any offer or offers made by the Board of Prison Terms Deputy Commissioner/Parole Administrator prior to the probable cause hearing.

In the event the parolee can make a sufficient offer of proof of a complete defense to the charges the Board of Prison Terms Deputy Commissioner/Parole Administrator, an expedited Probable Cause Hearing with Documentary and/or live testimony shall be scheduled. As an example, if the parole has uncontroverted documentary evidence that he or she was in Santa Rita jail when this violation allegedly occurred in Los Angeles, parolee shall be allowed to present such evidence at an expedited probable cause hearing between the 6th and 8th business day or at the earliest time possible thereafter if parolee is unable to produce such evidence by the 6th to 8th day.

On or before the 6th to 8th business day, a return to custody assessment (an offer) is made by the Deputy Commissioner/Parole Administrator, and the offer shall be communicated to the parolee's attorney.

On or before the 10th business day, a Probable Cause Hearing shall be held with the Deputy Commissioner/Parole Administrator, the parolee, and parolee's attorney.

The Deputy Commissioner/Parole Administrator conducting the hearing shall be the same Deputy Commissioner/Parole Administrator who made the return to custody assessment (offer) where practicable.

Parolee shall be permitted to present documentary evidence and hearsay testimony by way of offer of proof through his or her attorney in mitigation or as a partial or complete defense to the charges and/or the proposed disposition.

The Deputy Commissioner/Parole Administrator shall have the complete range of options to resolve the case. (Continue on parole, credit for time served, release from custody with pending charges, remedial sanctions/community based treatment, reduce the offer downward, dismiss some or all of the charges)

The Deputy Commissioner shall not have the authority to adjust the return to custody assessment upward at or during the probable cause hearing.

Parolee shall have the right to waive time as to any of these hearing time constraints with or without good cause.

Attorney shall have the right to a continuance upon the showing of good cause in the absence of his or her client's consent in cases of emergency or illness or upon such other showing that the Deputy Commissioner/Parole Administrator can make a finding of good cause.

There shall be a written record of this proceeding and the basis for any decisions made therein.

It is not necessary that the Probable Cause Hearing be audio/video recorded.

If at the conclusion of the probable cause hearing, the parolee has rejected the offer, parolee shall provide the Deputy Commissioner/Parole Administrator with a list of witnesses he or she would like to call at the revocation hearing. The location of the hearing shall be determined (within 50 miles of the violation), and the Deputy Commissioner/Parole Administrator shall make an independent ADA accommodation determination.

## REVOCATION HEARING

The revocation hearing shall be held at the earliest possible time and in no case later than 35 calendar days after the parole hold has been placed.

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **JERRY VALDIVIA, et al. v. GRAY DAVIS, et al.**

No.:   **USDC E.D. #CIV-S-94-0671 LKK GGH P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>August 21, 2003,</u> I served the attached

### DEFENDANTS' REVISED REMEDIAL PLAN

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, San Francisco, California 94102-7004, addressed as follows:

Michael W. Bien, Esq.
Rosen, Bien & Asaro
155 Montgomery Street, 8th Floor
San Francisco, CA 94104

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA 94964

Stephen J. Perrello, Jr.
P.O. Box 880738
San Diego, CA 92168

Alexander L. Landon
Law Offices of Alex Landon
2442 Fourth Avenue
San Diego, CA 92101

Karen Kennard
Kristen A. Palumbo
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 21, 2003, at San Francisco, California.

| A. ALBANO | _Albano_ |
| --- | --- |
| Declarant | Signature |

40006164.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Jerry Valdivia, et al. v. Gray Davis, et al.*

No.:            **USDC, Eastern District of California, Case No. CIV-S-94-0671 LKK GGH P**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On November 18, 2003, I served the attached

### STIPULATED ORDER FOR PERMANENT INJUNCTIVE RELIEF

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, P.O. Box 944255, Sacramento, California 94244-2550, addressed as follows:

| | |
|---|---|
| **Karen L. Kennard**<br>**Bingham McCutchen LLP**<br>**Three Embarcadero Center**<br>**San Francisco, CA 94111-4067** | **Alex Landon**<br>**Law Offices of Alex Landon**<br>**2442 Fourth Avenue**<br>**San Diego, CA 92101** |
| **Donald Specter**<br>**Prison Law Office**<br>**General Delivery**<br>**San Quentin, CA 94964** | **Stephen J. Perrello, Jr.**<br>**Law Offices of Stephen J. Perello**<br>**P.O. Box 880738**<br>**San Diego, CA 92168** |
| **Michael W. Bien**<br>**Rosen, Bien & Asaro**<br>**155 Montgomery Street, 8th Floor**<br>**San Francisco, CA 94104** | |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on November 18, 2003, at Sacramento, California.

R. Wells
Declarant

*R  Wells*
Signature

10025232.wpd

United States District Court
for the
Eastern District of California
March 9, 2004

* * CERTIFICATE OF SERVICE * *

2:94-cv-00671

Valdivias

v.

Schwarzenegger

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  March 9, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

```
      Stephen J Perrello Jr        AR/LKK
      Law Office of Stephen J Perrello
      P O Box 880738
      San Diego, CA  92168

      Alexander L Landon
      Law Offices of Alex Landon
      2442 Fourth Avenue
      San Diego, CA  92101

      Karen Kennard
      Bingham McCutchen LLP
      Three Embarcadero Center
      Suite 1800
      San Francisco, CA  94111

      Michael W Bien
      Rosen Bien and Asaro
      155 Montgomery Street
      Eighth Floor
      San Francisco, CA  94104
```

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA  94964

William Vernon Cashdollar
Attorney General's Office for the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550

Erika C Aljens
Attorney General's Office for the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550

Benjamin Laurence Pavone
Law Office of Benjamin Pavone
7676 Hazard Center Drive
Fifth Floor
San Diego, CA  92108-4503

Thomas Stuart Patterson
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA  94102-7004

John T Philipsborn
Law Offices of John T Philipsborn
507 Polk Street
Suite 250
San Francisco, CA  94102

Kristen A Palumbo
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA  94111-4067

Peter D Nussbaum
Altshuler Berzon Nussbaum Rubin and Demain
177 Post Street
Suite 300
San Francisco, CA  94108

Mark F Adams
San Diego Criminal
Defense Bar Association
962 Fifth Avenue
Suite 214
San Diego, CA  92101

Michael J McCabe
Criminal Defense Lawyers
Club of San Diego
2442 Fourth Avenue
San Diego CA 92101

Jack L. Wagner, Clerk

by: Deputy Clerk