IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE WARWICK,<br><br>      Plaintiff,<br><br>  v.<br><br>UNIVERSITY OF THE PACIFIC; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR); PATRICIA MILLER; MATTHEW CATE; MARVIN SPEED; TED RICH; MICHAEL BRADY; CLAUDIA BELSHAW; JILL BROWN; JOHN D. STOKES; GARY SWARTHOUT; DOES TWO THROUGH TWENTY-FIVE, inclusive,<br><br>      Defendants.<br>_____/ | No. C 08-3904 CW<br><br>ORDER DENYING PLAINTIFF'S RULE 60 MOTION FOR RELIEF FROM JUDGMENT (Docket No. 224) |

    Plaintiff Joanne Warwick moves for relief from judgment, pursuant to Federal Rules of Civil Procedure 60(b)(2), (3) and (d)(3). Docket No. 224. Defendants oppose the motion. Having considered all of the parties' submissions, the Court DENIES the motion.

BACKGROUND

    This lawsuit arises from Warwick's termination as a contract attorney for the California Parole Advocacy Program (CalPAP). CalPAP trains, appoints and assigns panel-contracted attorneys to

parolees facing parole revocation proceedings. CalPAP is operated by Defendant University of Pacific (UOP) through a contract with the State of California. CalPAP removed Warwick from the CalPAP panel of attorneys because her gate clearance at San Quentin prison was revoked. In response to her termination, Warwick filed suit against Defendants UOP, the California Department of Corrections and Rehabilitation (CDCR) and various individuals, claiming violations under Title 42 U.S.C. § 1983 and California business tort law. On July 6, 2010 this Court granted Defendants' motions for summary judgment on all claims.

Warwick's Rule 60 motion for relief from judgment is directed at the summary adjudication of her § 1983 claim. With respect to that claim, Warwick alleged that UOP; Ted Rich, Deputy Commissioner of the Board of Parole Hearings (BPH); Marvin Speed, BPH Executive Director; and Matthew Cate, Secretary of CDCR, deprived her of her constitutional First Amendment rights. Specifically, Warwick claimed that Rich and Speed retaliated against her because of her complaints about BPH, including her charges that BPH officials were responsible for certain purported problems with the CalPAP program and that BPH staff were not respecting inmates' due process rights and were committing malfeasance. Warwick alleged that Rich and Speed conspired with Mary Swanson, CalPAP program director, to retaliate against Warwick by suggesting that Warwick had sexual relationships with

2

inmates, setting in motion a series of events leading to Warwick's losing her clearance.

In granting Defendants' motion for summary judgment, the Court determined that the evidence was clear that Warden Brown made the decision to revoke Warwick's clearance. The Court found a close temporal link between the May 20, 2005 complaint letter that Warwick sent to Speed and the date Warwick's clearance was revoked, May 27, 2005. However, there was no evidence that Speed and Rich were involved in the warden's decision to revoke Warwick's clearance.[1] The Court found no evidence that Rich knew about the complaint letter, and no evidence that Speed or Rich insinuated to Brown, or anybody else, that Warwick was having sex with parolees. Accordingly, the Court granted summary judgment in favor of Rich and Speed. [2]

---

[1] As explained in the order, Brown testified that she learned that Warwick visited an inmate after his revocation proceedings had concluded, and that, on a different occasion, Warwick took a parolee to the Ukiah parole office, and then accompanied him or drove him to a motel. These incidents gave rise to Brown's concern that Warwick was misusing her status as a CalPAP attorney, and Brown's decision to revoke Warwick's clearance. The written explanation CDCR later provided to Warwick stated that her visiting privileges had been suspended because she had continued to visit prisoners in her role as a CalPAP attorney after the legal proceedings concerning parole had concluded. CDCR considered that such action is "an abuse of the privilege of attorney visiting and constitutes good cause for a suspension of visiting privileges."

[2] Warwick did not allege a § 1983 claim against Brown, but the Court noted in its summary judgment order that there was no evidence that Brown, on her own accord, revoked Warwick's clearance in retaliation for exercising her First Amendment rights.

3

The Court granted summary judgment in favor of Cate, concluding that, in light of the absence of evidence that Rich, Speed or Brown revoked Warwick's clearance in retaliation for her protected speech, Cate could not be held liable for CDCR's policies, practices and customs related to any alleged retaliatory clearance revocation.

Plaintiff's section 1983 claim against UOP failed because there was no evidence that state actors engaged in a conspiracy to retaliate against Warwick and, thus, UOP, as a private actor and alleged co-conspirator could not be held liable for engaging in such a conspiracy. Furthermore, an email in which Swanson informed Speed that in order to be a contract attorney with CalPAP, an attorney needed a clearance to enter a prison was insufficient to raise an inference that they agreed to terminate Warwick in retaliation for complaining about UOP, CalPAP, CDCR or BPH. Finally, because Warwick was an at-will independent contractor, UOP did not need to create a "cause" to remove Warwick from the CalPAP panel of attorneys.

On July 8, 2010, two days after this Court issued its order granting summary judgment, the Clerk entered judgment in favor of Defendants. On July 9, 2010 Plaintiff made a request to inspect records maintained by CDCR, pursuant to California Code of Regulations Title 15, section 3450. Plaintiff received, on August 5, 2010, various documents, including those that have prompted this motion. In approximately August or September 2010, Warwick

received a copy of San Quentin's Department Operations Manual Supplement, which is also addressed in this motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides that, "upon such terms as are just," a court may relieve a party from an order or final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; (6) any other reason justifying relief from operation of the judgment. Fed. R. Civ. P. 60(b). A motion for relief under Rule 60(b) must be made within reasonable time, and such a motion under subsections (1), (2) and (3) must be made no more than a year after entry of the judgment or order. Fed. R. Civ. P. 60(c).

"Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'" Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082,

5

1093 (9th Cir. 2003) (quoting Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc., 833 F.2d 208, 211 (9th Cir. 1987)).

Under Rule 60(b)(3), the movant must (1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct; and (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his or her case or defense. Casey v. Albertson's Inc., 362 F.3d 1254, 1260 (9th Cir. 2004); Jones v. Aero/Chem Corp., 921 F.2d 875, 878-79 (9th Cir. 1990). Rule 60(b)(3) "require[s] that fraud . . . not be discoverable by due diligence before or during the proceedings. Casey, 362 F.3d at 1260.

DISCUSSION

I. Jurisdiction

On August 5, 2010, Warwick filed a notice of appeal to the Ninth Circuit, seeking review of this Court's order granting summary judgment in Defendants' favor and entry of judgment against her. Subsequently, Warwick filed a second notice of appeal directed at the Court's order denying her motion to oppose costs. On July 9, 2011, while both appeals were pending, Warwick filed the present motion. The Ninth Circuit's August 10, 2011 order notified Warwick that the district court lacked jurisdiction to consider her proposed Rule 60(b) motion for relief without a limited remand from the Ninth Circuit. The court instructed Warwick to file a motion for limited remand accompanied by a

6

written statement that the district court wished to entertain the proposed motion, or an opening brief, by October 3, 2011. Warwick responded by filing a motion for voluntary dismissal of her appeals. On October 5, 2011, the Ninth Circuit granted the motion, pursuant to Federal Rule of Appellate Procedure 42(b). Because the appeals have been dismissed, this Court has jurisdiction to consider Warwick's Rule 60 motion for relief.

II. Timeliness

Warwick filed her Rule 60 motion a year and a day after judgment entered, and completed the submission of her supporting declarations two days after that. Thus, Warwick's motion is untimely. Warwick stated that she was having trouble with the filing, and intended to file a motion for an extension of time but did not do so. Warwick also stated that she has been facing health problems and other stressful situations. It is not clear that these problems explain the delay that occurred between when she received new information from CDCR in August and September 2010 and when she filed her motion for relief in July 2011. However, even if the merits of Warwick's motion are considered, relief from judgment is unwarranted.

II. Newly Discovered Evidence

Warwick points to three items of purported newly discovered evidence to argue that relief from judgment is warranted.

The first item is a memorandum dated June 3, 2005 from San Quentin sergeant E.J. Hinkle to Patricia Miller. The memorandum

7

states that on April 22, 2005, Warwick scheduled a visit with an inmate,[3] pursuant to the Valdivia injunction, although the inmate had already been offered a deal and accepted it.  The memorandum states that Warwick was informed that she had to go through "normal Attorney visits" to see the inmate.  Warwick contends that the memorandum establishes that "one of the reasons" given to justify revocation of her clearance was pretextual.  According to Warwick, there would have been no need for her to attempt to sign in as a CalPAP attorney when she was approved for regular attorney visits.  Warwick propounds this evidence to attack testimony that Warwick misrepresented herself to gain access to San Quentin and thus engaged in inappropriate conduct.  However, Warwick's argument misconstrues the reason her clearance was revoked; it was revoked because Brown was concerned that Warwick's ongoing relationship with an inmate and parolee after the parole revocation process was inappropriate--not that Warwick misrepresented the type of visit.  Furthermore, this evidence does nothing to cure the deficiencies in proof that the Court identified in granting summary judgment on the § 1983 claims.

The second item Warwick has identified is a San Quentin visitors log, dated June 1, 2005, which listed Warwick's visits to inmate Hodge on May 11 and May 17, 2005.  Just as she argued with

---

[3] The name of the inmate is redacted from the memorandum, but in her briefing, Warwick appears to admit that the inmate in question was Hodge.

respect to the Hinkle memorandum, Warwick claims that the log shows that the reasons for the revocation of her clearance were false and pretextual, in that it demonstrates that she was approved for regular attorney visits in May with Hodge. For the same reasons explained above, the log does not amount to new evidence that warrants relief from this Court's summary judgment order.

Warwick also argues that the log shows how easily one could verify the basis for her May visits and, thus, verify an allegation before revoking a clearance based on unsubstantiated rumors. This is irrelevant because it does not cure the deficiencies in proof that were the basis for the Court's determination.

The third newly discovered document is the second page of an April 14, 2006 letter sent from John Dovey to Warwick. The second page of the letter shows that a blind carbon copy was sent to Jeanne S. Woodford, along with other CDCR officials, informing them of Warwick's inquiry regarding the clearance revocation. Even if Warwick exercised due diligence to discover it, there is no reason to believe that it would have affected the outcome of the case. Warwick posits that if she had received the letter she would have deposed Woodford and her testimony would have likely showed a failure to follow proper procedure. However, Warwick provides no evidence, such as a declaration by Woodford, to establish what Woodford would have likely said in a deposition.

9

Warwick's argument makes clear that the letter itself would not have changed the case; it would have simply prompted further discovery request.

In sum, none of the three newly discovered documents identified by Warwick justify her request for relief from judgment.

III. Fraud

Warwick contends that the CDCR committed fraud by withholding certain evidence during discovery. Specifically, Warwick points to the withholding of San Quentin's Department Operations Manual Supplement, which Warwick refers to as "SQ Operational Plans" or "SQ Plans," concerning visiting and the exclusions of visitors. Warwick contends that the withholding of this document prevented her from questioning Warden Brown or Warden Stokes about the policies set forth therein. It is troubling that, although Warwick requested "San Quentin Institutional Operation Plans" regarding gate stops in February 2009, she did not receive the Supplement until September 2010. However, the provision of the Supplement on which Warwick relies is not materially different from a provision regarding exclusion of visitors, which was available as part of California Code of Regulations section 3176.3(f). Both provide for written notification to the person excluded, as well as a notification that, upon request, the person may meet with the official who ordered the exclusion. Warwick deposed Chief Deputy Warden John Stokes, regarding the

10

clearance revocation's compliance with section 3176.3(f). Furthermore, it is not clear that the Supplement could not have been uncovered through due diligence in the discovery process. In fact, Plaintiff's then counsel sought to file a motion to compel the production of documents, but it was denied because it was untimely.

Next, Warwick asserts that emails were destroyed. Her argument is not clear in that at certain points she refers to emails that were actually produced during discovery. Warwick appears to criticize CDCR's email retention practices, although the basis for this criticism, including the State Records Management Act, the Department Operations Manual, the Records Retention Schedules and related deposition testimony, were available during the litigation, such that this issue could have been raised earlier. Warwick's bare allegation of perjury against Mike Miller is unavailing. Nor has Warwick supported her claim that six months to one year of Valdivia Taskforce records are missing. She has made a Public Records Act request and personally inspected the Valdivia Taskforce records and has failed to find the records. However, Warwick does not explain why she believes the records were destroyed.

Warwick has failed to point to clear and convincing evidence that Defendants won the judgment through fraud, misrepresentation or other misconduct. Relief under Rule 60(b)(3) is not warranted.

IV. Fraud on the Court

In addition to Rule 60(b), Warwick has invoked Federal Rule of Civil Procedure 60(d)(3) as the basis for her motion for relief from judgment. Rule 60(d) states that the "rule does not limit a court's power to: . . . (3) set aside judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Warwick has not shown a fraud on the Court. The Court's inherent power to vacate or amend a judgment obtained by fraud is narrowly construed, "applying only to fraud that defiles the court or is perpetrated by officers of the court." United States v. Chapman, 642 F.3d 1236, 1240 (9th Cir. 2011). Fraud on the court occurs when "the fraud rises to the level of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." Id. (internal quotation marks omitted). Although Warwick claims fraud on the court, she does not explain how such a fraud occurred and the evidence she has submitted does not support such a finding.

CONCLUSION

Warwick's motion for relief from judgment is DENIED.

IT IS SO ORDERED.

Dated: 11/15/2011

CLAUDIA WILKEN
United States District Judge

12